## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANKLIN BENJAMIN, *et. al.*, | : | 1:09-cv-1182 |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| DEPARTMENT OF PUBLIC , | : | Hon. John E. Jones III |
| WELFARE OF THE | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA and ESTELLE B. | : | |
| RICHMAN, in her official capacity as | : | |
| Secretary of Public Welfare of the | : | |
| Commonwealth of Pennsylvania | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### March 10,  2010

## I.     INTRODUCTION

Currently pending before the Court in this class action is a Motion to

Intervene filed by Craig Springstead, by and through his father and guardian,

Bertin Springstead; Maria Meo, by and through her mother and guardian, Grace

Meo; Daniel Bastek, by and through his guardian, John Bastek; Michael Storm, by

and through his guardian, Polly Spare; Beth Ann Lambo, by and through her father

and guardian, Joseph Lambo; Richard Clarke, by and through his father and

guardian, Leonard Clarke; Richard Kohler, by and through his sister and guardian,

Sara Fuller; Maria Kashatus, by and through her father and guardian, Thomas

Kashatus; and Wilson Sheppard, by and through his brother and next friend,

Alfred Sheppard ("Applicants" or "Springstead Intervenors") on November 10,

2009.  (Doc. 27).  For the reasons that follow, we will deny the Motion to

Intervene.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

On June 22, 2009, Plaintiffs Franklin Benjamin, Richard Grogg, Frank

Edgett, Sylvia Baldwin, and Anthony Beard (collectively, "Plaintiffs") filed a

Complaint against Defendants, Department Public Welfare of the Commonwealth

of Pennsylvania and Estelle B. Richman in her official capacity as Secretary of

Public Welfare of the Commonwealth of Pennsylvania ("DPW" or "Defendants").

(Doc. 1).  On July 14, 2009, Plaintiffs filed an Amended Complaint against the

Defendants.  (Doc. 9).  On August 31, 2009, Plaintiffs filed an unopposed Motion

to certify a class.  (Doc. 15).  On September 2, 2009, the Court certified the

following class:  All persons who: (1) currently or in the future will reside in one

of Pennsylvania's state-operated intermediate care facilities for persons with

mental retardation; (2) could reside in the community with appropriate services

2

and supports; and (3) do not or would not oppose community placement ("the Class"). (Doc. 17).

In the Amended Complaint, Plaintiffs allege that DPW, as the Commonwealth agency that is responsible to provide services to Pennsylvanians with mental retardation, has failed to offer and provide Plaintiffs with the opportunity to receive services in integrated, community settings that are most appropriate settings to meet their needs. (Doc. 9). Plaintiffs, therefore, seek appropriate declaratory relief and injunctive relief pursuant to Title II of the American with Disabilities Act, 42 U.S.C. § 12312 and 28 C.F.R. § 35.130(b)(3) ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and 28 C.F.R. § 41.51(d) ("RA" or "Section 504"). (*See* Doc. 9).

Applicants allege that they are *de facto* members of the certified class. Specifically, Springstead Intervenors assert that persons with developmental disabilities should receive the care and support they require in a setting appropriate to each individual's unique needs, whether it be a community-based facility or an Intermediate Care Facility for the Mentally Retarded ("ICF/MR"). Therefore, although Applicants do not oppose the named Plaintiffs' right to community care for themselves, they submit this Motion for Intervention based on

their belief that the Class would include the Springstead Intervenors who do not

seek this relief.  (*See* Docs. 27, 29).

On November 10, 2009, Applicants filed the instant Motion.  (Doc. 27).

The Motion has been fully briefed by all parties.  (*See* Docs. 29, 34, 37).  It is

therefore ripe for disposition.

## III.   <u>STANDARD OF REVIEW</u>

The applicable standards for adjudicating a motion to intervene will be fully

set forth within the analysis of the pending Motion.

## IV.   <u>DISCUSSION</u>

As we previously stated, Applicants are residents of ICFs/MR who do not

wish to be "forced" into community care.  Rather, they believe that persons with

developmental disabilities should receive the care and support they require in a

setting appropriate to each individual's unique needs, be it a community-based

facility or an ICF/MR.  Applicants argue that they have a concrete, legally

protectable interest in their own care, i.e., the availability of institutional care.

Applicants, therefore, assert that they are *de facto* members of the Class and seek

to intervene, alleging that their rights to choose ICF/MR care would be directly

affected by Plaintiffs' lawsuit should Applicants be bound by any final judgment

or settlement.

As Applicants submit, the Federal Rules of Civil Procedure provide for two types of intervention: intervention as of right and permissive intervention.  *See* Fed.R.Civ.P. 24.  We will discuss the two types of intervention in turn.

### A.   Intervention as of Right

Federal Rule of Civil Procedure 24 ("Rule 24") provides, in pertinent part:

> **Intervention as of Right**.   On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest unless existing parties adequately represent that interest.

Fed.R.Civ.P. 24(a).  The United States Court of Appeals for the Third Circuit has instructed that Rule 24(a) entitles an applicant to intervene if the applicant establishes that all of the following prongs: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998); *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992); *Harris v. Pernsley*, 820 F.2d 592, 596 (3d

Cir. 1987) *cert denied*, 484 U.S. 947 (1987).[1]  The applicant carries the burden of

proving all fours parts of the test under Rule 24.   *See United States v. Alcan*

*Aluminum*, 25 F.3d 1174, n.9 (3d Cir. 1994).  We shall measure the case at bar

against the four prongs.

### 1.      Timeliness of Intervention Application

The first prong of the intervention as of right test concerns the timeliness of

the intervention application.  Applicants argue that the application was timely as it

was filed at an early point in the proceeding.  Here, Plaintiffs filed their amended

complaint on July 14, 2009, Defendants moved to dismiss the complaint on

September 24, 2009, and the trial is scheduled for October 2010.  Applicants

assert, therefore, that neither Plaintiffs nor Defendants can plausibly argue that

granting the instant Motion will cause any prejudice, "where the Defendants have

yet to file a responsive pleading, no discovery has taken place, and the Court has

yet to rule on the Defendant's Motion to Dismiss."[2]  (*See* Doc. 29 p. 7).  Further,

Plaintiffs concede that the Motion is not untimely and do not challenge this prong

---

[1]These cases and others cited within this Memorandum were decided prior to one or more amendments to Rule 24.  Those amendments, however, did not change the substance of Rule 24 in the subsections pertinent to this matter.  *See* Fed.R.Civ.P. 24 advisory committee's notes, 2007 Amendment ("The language of Rule 24 has been amended as part of the general restyling of the Civil Rules to make them more easily understood. . . . These changes are intended to be stylistic only.").  Therefore, the cases cited continue to control our analysis of the present Motion.

[2] The Court denied Defendant's Motion to Dismiss (Doc. 37) on January 25, 2010.  (Doc. 38).

6

because the current schedule would be unaffected if the intervention is permitted. (*See* Doc. 34 p. 5; Doc. 37 p. 3).

Because Plaintiffs concede this point and because the application was filed approximately three months after the amended complaint was filed, no measurable discovery had been conducted in the case, and the trial is scheduled to commence in October 2010, we find that the application was, in fact, timely.

## 2.   Interest in the Litigation

Federal Rule of Civil Procedure 24(a) requires that applicants demonstrate an interest in this action that is "significantly protectable." The Third Circuit instructs that this means that the asserted interests "must be legal interests as distinguished form interests of a general and indefinite character . . . [T]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Harris*, 820 F.2d at 601. Further, the Third Circuit instructs that the determination of whether a "significantly protectable" legal interest exists involves a pragmatic analysis and that there is no set list of interests that qualify as sufficient for intervention. *See Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969-70 (3d Cir.1998). Intervenors, however, must have "an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Id*. at 972.

Moreover, an applicant typically has a right to intervene where "the action will have a significant *stare decisis* effect on the applicant's rights, . . .the contractual rights of the applicant may be affected by a proposed remedy," *Harris* 820 F.2d at 601, or the applicant is the "real party in interest" and "would have standing to raise the claim" itself. *Alcan*, 25 F.3d at 1185.

Springstead Intervenors, as residents of ICFs/MR who oppose forced placement in community care, allege that they have concrete, legally protectable interests in their own care, and more broadly, the availability of institutional care. (*See* Doc. 29 p. 3). Applicants further allege that these concrete interests are directly implicated in this litigation. (*See* Doc. 29, p. 3). Specifically, Applicants assert that they have a legally protectable interest in their own care, an interest in retaining a meaningful right to choose institutional options, and an interest in "opposing Plaintiff's claims that ICFs/MR are not the most integrated settings appropriate to the needs of *any* individual resident of those facilities." *Id*. at 9 (emphasis in original). Further, Applicants contend that if Plaintiffs' claims proceed on the present class action basis, the litigation "will impair the Springstead Intervenors' rights to choose ICF/MR care because the Applicants will, as a

practical matter, be bound by any potential judgment or settlement in this case"[3]

resulting from Plaintiffs seeking "appropriate declaratory relief and injunctive

relief" against Defendant DPW to allow all class members to "choose" community-

based care if applicable.  *Id*. at 4.  Applicants argue that this language would leave

them unable to choose to remain in institutional care if they were eligible for

community-based care.  Applicants cite *Olmstead v. L.C. ex rel. Zimring*, 527 U.S.

581 (1999) and *Ligas v. Maram*, No. 1:05-cv-04331 (N.D. Ill. July 7, 2009) (class

decertification order) to support their argument that they have a legally protectable

interest of the right of their own care and the right to choose the best care option in

light of his or her own personal circumstances.

 In *Olmstead*, mentally disabled patients brought suit against the State,

challenging their confinement in a segregated environment and seeking placement

in community care residential programs.  In a plurality opinion, Justice Ginsburg

concluded that, under Title II of the ADA, it was a violation of the ADA to force

---

[3] Applicants assert that Plaintiffs' action threatens their choice to the best care option in light of his or her own personal circumstances because Plaintiffs seek Rule 23(b)(3) relief, which offers no ability to "opt-out,"and thus, converting the underlying litigation from a policy disagreement into a dispute with concrete consequences.  (*See* Doc. 29 p. 11).  In support of this argument, Applicants rely on 7C Wright, Miller & Kane, Federal Practice & Procedure, Civ. 3d § 1908 (2009) (noting that the interest requirement is "one of inclusion rather than exclusion.  If there is a direct substantially legally protectable interest in the proceedings, it is clear that this requirement of the rule is satisfied . . . It is sufficient also if the judgment will have a binding effect on the would-be intervenor.").

developmentally disabled patients to reside in institutionalized settings when they are able to live more fully integrated into society at large and do not oppose doing so.  527 U.S. at 597-602.  Thus, states are required to place persons with mental disabilities in community settings when the State's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated.  *See id*.  In so holding, however, the plurarity emphasized that "nothing in the ADA or in its implementing regulations condones termination of institutional settings for persons unable to handle or benefit from community settings.  Nor is there any federal requirement that community-based treatment be imposed on patients who do not desire it." *Olmstead*, 527 U.S. at 583; *see also* 28 C.F.R. § 35.130(e)(1) ("Nothing in this part shall be construed to require an individual with a disability to accept any accommodation . . . which the individual chooses not to accept.").  Thus, the *Olmstead* Court, albeit in dicta, recognized that states need to maintain a range of facilities for the care and treatment of persons with diverse mental disabilities.

In opposition to the Motion, Plaintiffs contend that Springstead Intervenors have no direct, "significantly protectable interest" that is jeopardized by this litigation for the simple reason that Applicants are explicitly excluded from the

10

class definition.  Plaintiffs assert that the class definition, approved by this Court, "has transformed any interest the Movants might have had from one that could be significant and legally protectable . . . to one that is . . . general and remote, if not purely illusory."  (*See* Doc. 34 p. 6).  Plaintiffs allege that the class definition itself preserves the choice that Applicants seek to protect by including in the Class specifically state ICF/MR residents "who do not or would not oppose community placement."  *Id*.  Thus, because Applicants are opposed to community placement, they will not be subject to any relief granted from the decision of the underlying class action litigation.[4] [5]

    While the Court does not doubt that Applicants have a bona fide concern in their own care, that concern does not rise to the level of a significantly protectable in the interest in the litigation warranting intervention as a party.  We must agree, therefore, with Plaintiffs that the definition of the Class specifically excludes

---

[4]Further, Plaintiffs assert that they carefully formulated their claims in this narrow manner pursuant to *Olmstead*'s holding that the right to community services afforded by the ADA has been limited to those individuals who are not opposed to community placement.  The language in the certified class is taken verbatim from the Supreme Court's controlling precedent. *See Olmstead,* 527 U.S. at 587 (transfer appropriate where it "is not opposed by the affected individual"); *id.* at 607 ("the affected persons do not oppose such treatment").

[5] Plaintiffs proceed to explain that Applicants' status as non-class members insulates them from any potential settlement between Plaintiffs and Defendants because a settlement is a contract, which is not binding on a non-party.  Additionally, Plaintiffs assert that a judgment on the merits in this case would not preclude any claims that Applicants may have since "one of the elements of claim preclusion res judicata is identity of the parties or their privities." *Churchill v. Star Enterprises*, 183 F.3d 184, 194 (3d Cir. 1999).

Applicants because they oppose community placement, despite their ability to reside in the community with appropriate services and supports.  In making this determination, we are persuaded by the holding of United States Court of Appeals for the Seventh Circuit in *Ligas v. Maram*, 478 F.3d 771 (7th Cir. 2007), and the underlying holding of the district court in that case.  Interestingly, both parties have recognized and relied on this case due to its almost identical circumstances to the instant case.  In *Ligas*, the Seventh Circuit ultimately affirmed the district court's holding that the interest of the proposed intervenors, individuals who opposed community placement and sought intervention to ensure that the disabled would still retain a choice of where they lived,  would not be threatened or impaired by the lawsuit.  *Ligas*, 478 F.3d at 774.  The Seventh Circuit reasoned that a verdict in favor of the plaintiffs would not leave the proposed intervenors without a choice of institutional care because the plaintiffs' complaint was "replete with language of choice."  *Id*. Thus, "nothing in the complaint . . . would require the state to force those who desire institutional care to move out."  *Id*.

Here, as in *Ligas*, Plaintiffs have narrowly tailored the class definition to affect only those disabled individuals who "do not or would not oppose community placement."  The class definition, which this Court certified by order on September 2, 2009, clearly excludes those disabled individuals currently residing in ICFs/MR

12

who oppose discharge from the institutional setting.  The ultimate outcome of this suit, therefore, would not require the state to force those who desire institutional care to move out.[6]  Accordingly, Applicants have not demonstrated an interest in the litigation to justify intervention as of right pursuant to Federal Rule of Civil Procedure 24(a).

Although Applicants carry the burden of proving all four parts of the test under Rule 24(a) and have failed to do so with respect to the interest in the litigation prong, in the exercise of completeness, we will analyze the remaining two prongs of the test in this narrative.  *See Alcan Aluminum*, 25 F.3d n.9; *see also Harris*, 820 F.2d at 596 ("Although these requirements are intertwined, each must be met to intervene as of right.").

### 3.   Potential Impairment of the Interest

---

[6] Further, Applicants put much emphasis on the fact that the Disability Rights Network (DRN) and Defendant DPW are currently in the midst of drafting a statewide Olmstead plan to end "unnecessary" institutionalization of persons with mental illness.  Applicants argue that "the parties could use the Olmstead integration plan for people with mental illness as a framework of potential settlement in this case." (*See* Doc. 37 p. 7).  We find this argument flawed for two reasons.  First, Applicants' argument has no basis in law.  Both the ADA and our Supreme Court in *Olmstead* unequivocally hold that no disabled individual must accept accommodation which he or she opposes.  In fact, the *Olmstead* Court recognized that States need to maintain a range of facilities for the care and treatment of persons with diverse mental disabilities.  *Olmstead*, 527 U.S. at 507-602.  Therefore, Applicants' fear of being forced to live in community-based settings is unfounded.  Furthermore, courts have held that mere speculation is not enough to generate an interest in the litigation.

13

Once an applicant for intervention has established that he or she has a sufficient legal interest in the underlying dispute, the applicant must also show that the interest is in jeopardy in the lawsuit. *Alcan Aluminum*, 25 F.3d at 1181 n.9; *see also Harris*, 820 F.2d at 596. In making such a determination, the court is obligated to assess the "practicable consequences of the litigations," and "may consider any significant legal effect on the applicants' interest." *Id.* at 601.

Springstead Intervenors argue that they face a "tangible threat" because Plaintiffs and Defendants have both agreed to proceed on a class basis. Further, Applicants assert that the "do not or would not oppose" limitation does not alleviate the threat of harm because Plaintiffs are seeking relief before that class is precisely defined.

As we previously determined, Springstead Interveners do not have a legally protectable interest which warrants intervention as of right on part of Applicants because they are specifically excluded from the certified class in this suit. Therefore, Applicants' alleged interest cannot logically be placed in jeopardy by the case *sub judice* because that interest is not implicated in the matter at hand. Accordingly, Applicants have failed to prove this part of the intervention as of right test.

## 4.  <u>Representation by Existing Party in Litigation</u>

The final prong of the intervention as of right test is that Applicants must demonstrate that their interests are not adequately represented by the existing parties in the lawsuit. *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982). Applicants must demonstrate their interests are sufficiently different that the representative cannot give those interests proper attention. The Third Circuit has instructed that representation is typically considered to be inadequate for any one of the following three reasons:

> (1) Although applicants' interests are similar to those of a party, they are sufficiently diverse that there is a risk that the existing party cannot or will not devote proper attention to the applicant's interest;
>
> (2) There is collusion between the representative party and the opposing party;
>
> (3) The representative parry has not been diligent in prosecuting the litigation;

*Id.*

In its Motion to Intervene, Applicants assert that they meet the inadequate representation prong because neither Plaintiffs as a class nor Defendants adequately represent their interests. Specifically, Applicants argue that, not only do their interests "diverge from those of the Plaintiffs," Plaintiffs' interests also are "openly antagonistic of the [Springstead] Intervenors' wishes" because Plaintiffs seek to "force" all class members to choose community-based care, whereas the Springstead Intervenors wish to protect their rights to choose appropriate treatment

15

in an institutional setting. (*See* Doc. 29 pp. 17-18).  Further, the Springstead

Intervenors allege that Defendants' failure to oppose class certification

demonstrates that Defendants do not adequately represent Springstead Intervenors'

interests.

Plaintiffs counter Applicants' inadequacy of representation arguments in

several ways.  First, Plaintiffs assert that they in fact represent Applicants' interests

by "carefully framing this lawsuit and the class definition to exclude from the Class

those individuals, like Movants, who are opposed to community placement."  (*See*

Doc. 34 p. 15).  Second, Plaintiffs argue that DPW "has proved itself able to

represent the Movants' interest."  *Id.*  Plaintiffs aptly submit that there is a well-

settled presumption that "when a representative party is a government body

charged with representing the interests of proposed intervenors . . ." it will do so

adequately unless there is a "showing of gross negligence."  *Brody*, 957 F.2d at

1123 (citing *Del. Valley Citizens Council for Clean Air v. Pa.*, 674 F.2d 970, 973

(3d Cir. 1982)).  Moreover, Plaintiffs highlight that "DPW has vigorously defended

this action" and had filed a Motion to Dismiss Plaintiffs' claims in their entirety.

(*See* Doc. 34 p. 16).  Even Applicants concede that presently both Defendants and

Applicants oppose the relief sought by Plaintiffs at this stage of the litigation.  (*See*

Doc. 37 p. 13).

16

After carefully considering the record, including but not limited to the three typical reasons constituting inadequate representation as delineated by the Third Circuit, we do not find any interest alleged by Applicants that is not being adequately represented by Defendants in this action.  *See Hoots*, 672 F.2d at 1135.

Applicants have failed to demonstrate that their alleged interests sufficiently diverge with those of Defendants such that there is a risk that Defendants cannot or will not devote proper attention to Applicants' interest.  Notably, Defendants here are the Department of Public Welfare of the Commonwealth of Pennsylvania and Estelle B. Richman in her official capacity as Secretary of Public Welfare of the Commonwealth of Pennsylvania.  Although Applicants do recognize that DPW is a governmental entity, they baldly claim that Defendants' view of the "public welfare" squarely conflicts with Applicants' personal interests.  Nonetheless, aside from this unsubstantiated allegation Applicants have made no effort to show gross negligence or bad faith on the part of DPW, and have therefore not overcome the presumption that DPW, as a governmental body charged with protecting the interests of the Springstead Intervenors, will provide adequate representation.

Because Applicants have not raised the issue of potential collusion between the representative party, Defendants, and the opposing party, Plaintiffs, this issue does not warrant discussion.

17

Finally, although Applicants attempt to downplay the parallel positions of

Defendants and Springstead Intervenors of opposing the relief sought at this early

of the litigation, Applicants fail to demonstrate that Defendants will fail to

prosecute their defenses in the future or will alter their position in this litigation.

Therefore, we find no reason to believe that the representative party is not

diligently prosecuting this lawsuit.  This translates, in our view, to a finding that

Defendants, through their able counsel, will certainly protect the interests of

Applicants as this case proceeds to trial.

We therefore conclude that Applicants have not demonstrated that their

alleged interests are not being adequately represented by Defendants in this action.

As a result of Applicants' failure with respect to this prong, as well as the

"Interest" and "Impairment" prongs of the intervention as of right test, intervention

as of right pursuant to Rule 24(a) is accordingly not warranted in the case *sub

judice.*

### B.   Permissive Intervention

If a party fails to meet the requirements of Rule 24(a) to intervene as a matter

of a right, that party nonetheless may be granted permission to intervene under

Rule 24(b).  Rule 24(b) provides, in pertinent part: "On timely motion, the court

*may* permit anyone to intervene who: . . . has a claim or defense that shares with the

18

main action a common question of law or fact. . . ." Fed.R.Civ.P. 24(b)(1)

(emphasis added).  Rule 24(b) further provides that, when a court exercises its

discretion, "the court must consider whether the intervention will unduly delay or

prejudice the adjudication of the original parties' rights." Fed.R.Civ.P.24(b)(3).  In

exercising its discretion, the court should consider various factors, including

whether the proposed intervenors will add anything to the litigation and whether

the proposed intervenors' interests are already adequately represented in the

litigation. *Hoots*, 672 F.2d at 1136.

Applicants argue that permissive intervention is warranted as there are

common questions of law and fact regarding this litigation, "including, [but] not

limited to: (1) whether class action treatment is appropriate; (2) whether

community care is appropriate for all class members; and (3) whether community

care is, in fact, desired by all class members." (Doc. 29 p. 20).  Further,

Springstead Intervenors contend that this Court should grant permissive

intervention because the  inclusion of Applicants would cause no delay or undue

hardship on the parties. *Id.*  This action is not scheduled for trial until October

2010.  Further, at the time the Motion was filed, the Court had not resolved

Defendants' responsive pleading, and no discovery had taken place. *See id.*

19

In response, Plaintiffs argue that Applicants have asserted neither a claim nor a defense, and thus, do not have a claim or defense that share common questions with the main lawsuit.  As previously detailed herein, Plaintiffs assert that Springstead Intervenors do not have an interest in this suit because they are specifically excluded by the definition of the Class as those who are opposed to community placement.  Moreover, Plaintiffs submit that adding Applicants to the litigation would prejudice the adjudication of the parties' rights.  (*See* Doc. 34 p. 18).  Plaintiffs argue allowing Applicants to intervene will result in decertification of the class, and such decertification might adversely affect other absent class members who are "isolated, have limited resources, and have disabilities that prevent them from bringing individual lawsuits." *Id.*  Finally, according to Plaintiffs, a decertification of the class might further prejudice the named Plaintiffs because if the lawsuit was limited to these five named individuals, Defendants will most likely challenge their right to secure community services ahead of other ICF/MR residents who are also waiting for community placements. *Id.* at 19.

After a thorough review of the record and in sound discretion of the Court, we find that permissive intervention pursuant to Rule 24(b) is not warranted in this case.  Assuming, *arguendo*, the Springstead Intervenors share a claim or defense with the parties in the litigation, permissive intervention is nonetheless

20

inappropriate because the Applicants' interests are already represented in the litigation, and their appearance as intervenors would not sufficiently add anything to the litigation.  *See Hoots*, 672 F.2d at 1136.  As discussed above, we have determined that, while the precise interests of the Applicants may not necessarily be represented by Plaintiffs, those interests are represented adequately by DPW as the governmental body charged with protecting the interests of those such as Applicants.  *See supra*, § VI(A)(4).  The Third Circuit has explained that if the interests of the proposed intervenors are already represented in the litigation, courts typically deny such applications to intervene.  *Hoots*, 672 F.2d at 1136.  Furthermore, intervention by the Applicants would not add anything to the litigation.  To reiterate, Applicants' interests are not implicated in the underlying suit because, although they do present a different viewpoint than the class Plaintiffs, they are explicitly excluded from the class.  As such, the circumstances do not warrant permissive intervention by the Applicants.

## V.   CONCLUSION

Because we find that intervention is unwarranted under either Federal Rule of Civil Procedure 24(a) or 24(b), we will deny the Applicants' Motion to Intervene.  An appropriate Order follows.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Applicant's Motion to Intervene (Doc. 27) is **DENIED.**

.

                                                   /s/ John E. Jones III
                                                   John E. Jones III
                                                   United Stated District Judge