IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

───────────────────────────────

| | |
|---|---|
| FRANKLIN BENJAMIN, by and through his next friend, Andrée Yock; RICHARD GROGG and FRANK EDGETT, by and through their next friend Joyce McCarthy; SYLVIA BALDWIN, by and through her next friend, Shirl Meyers; ANTHONY BEARD, by and through his next friend Nicole Turman, on behalf of themselves and all others similarly situated,<br><br>                      *Plaintiffs,*<br><br>      v.<br><br>DEPARTMENT OF PUBLIC WELFARE OF THE COMMONWEALTH OF PENNSYLVANIA and GARY ALEXANDER, in his official capacity as Secretary of Public Welfare of the Commonwealth of Pennsylvania,<br><br>                      *Defendants.* | **Civil Action No. 1:09-cv-1182-JEJ**<br><br>Class Action<br><br>Complaint Filed June 22, 2009 |

───────────────────────────────

**MEMORANDUM IN SUPPORT OF
MOTION OF DIANE SOLANO,
BY AND THROUGH HER BROTHER AND GUARDIAN, CARL A. SOLANO,
TO INTERVENE
FOR PURPOSE OF OBJECTING TO CLASS ACTION SETTLEMENT**

───────────────────────────────

Carl A. Solano
SCHNADER HARRISON SEGAL & LEWIS LLP
  *Attorney for Amicus Curiae*
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 751-2202

# TABLE OF CONTENTS

*Page*

Procedural History ........................................................................................................ 1

Statement of Facts......................................................................................................... 2

Statement of Question Involved.................................................................................... 5

Argument ...................................................................................................................... 6

A.   Diane Solano Should Be Permitted To Intervene as of Right for the Limited
     Purpose of Objecting to the Class Action Settlement. ......................................... 6

B.   Alternatively, Diane Solano Should Be Permitted To Intervene Permissively for
     the Limited Purpose of Objecting to the Class Action Settlement .................... 14

Conclusion .................................................................................................................. 15

## **TABLE OF AUTHORITIES**

*Page*

*Cases*

*Benjamin v. Dep't of Publ. Welfare*, 267 F.R.D. 456 (M.D. Pa. 2010), *aff'd*, 2011 U.S. App. LEXIS 7124 (3d Cir. 2011) ................................................................. 1-2, 8-12, 14

*Benjamin v. Dep't of Publ. Welfare*, 2011 U.S. Dist. LEXIS 40100 (M.D. Pa 2011) ....................... 2

*Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684 (D. Minn. 1994) ........................................ 6

*Carlough v. Amchem Prods., Inc.*, 5 F.3d 707 (3d Cir. 1993) ........................................................ 6

*Gaskin v. Pennsylvania*, 197 Fed. Appx. 141 (3d Cir. 2006) ......................................................... 6

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir.), *cert. denied*, 484 U.S. 947 (1987) .................... 6-7, 14

*In re Bear*, 44 Pa. D.&C. 4th 225 (C.P. Dauphin 1999) ............................................................. 8-9

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005) ................................... 7

*In re Easly*, 46 Pa. D.&C. 4th 374 (C.P. Venango 2000), *aff'd*, 771 A.2d 844 (Pa. Cmwlth.) (en banc), *appeal denied*, 567 Pa. 731, 786 A.2d 991 (2001) .................................. 9

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) .................................................. 14

*Ligas ex rel. Foster v. Maram*, 2010 U.S. Dist. LEXIS 34122 (N.D. Ill., Apr. 7, 2010) .......... 12-13

*Marino v. Ortiz*, 484 U.S. 301 (1988) ............................................................................................. 6

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) ........................................................ 1, 8-13

*Tennessee Assn. of Health Maintenance Orgs. v. Grier*, 262 F.3d 559 (6th Cir. 2001) ................. 6

*Uhl v. Thoroughbred Tech. & Telecoms., Inc.*, 2001 U.S. Dist. LEXIS 13115 (S.D. Ind. 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002) ................................................................................. 6

*Court Rules*

Federal Rules of Civil Procedure

    Rule 24 ................................................................................................................... 6, 13-15

### MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

Diane Solano, by and through her guardian, Carl A. Solano, moves to intervene in this action for the limited purpose of presenting and having the Court consider her objections to the proposed settlement of this action.

### Procedural History

In June 2009, plaintiffs filed this case as a class action under the Americans with Disabilities Act (ADA) and the Rehabilitation Act.  Plaintiffs are five residents of three of the Commonwealth's intermediate care facilities for persons with mental retardation ("ICFs/MR" or "State Centers") who seek to be relocated to community facilities.  On September 2, 2009, the Court granted an unopposed motion for certification of a class of all residents of the State Centers who "could reside in the community with appropriate supports and services" and "do not or would not oppose community placement."  Thereafter, the Court denied the defendants' motion to dismiss.

In March 2010, the Court denied a motion by nine State Center residents to intervene to protect their right under *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), to remain in the State Centers, and a year later the Court of Appeals affirmed.  In its opinion, this Court concluded that the litigation did not threaten the nine residents' right to remain in the State Centers because the nine could exclude themselves from the class by declaring their opposition to community placement under the final prong of the class definition.  *Benjamin v. Dep't of Publ. Welfare*, 267 F.R.D. 456 (M.D. Pa. 2010), *aff'd*, 2011 U.S. App. LEXIS 7124 (3d Cir. 2011) (not precedential).  Movant Diane Solano was not one of the nine State Center residents who filed the 2010 motion, though she did participate as an *amicus curiae* in the Court of Appeals.

In January of this year, the Court entered summary judgment for the plaintiffs on liability. *Benjamin v. Dep't of Publ. Welfare*, 2011 U.S. Dist. LEXIS 40100 (M.D. Pa 2011). In May 2011, the parties entered into an agreement of settlement. The Court tentatively approved the settlement on May 27, 2011. It has scheduled a hearing on final approval of the settlement for August 22, 2011, and has ordered that any objections to the settlement be filed by August 2, 2011. Diane is filing objections to the settlement.

### Statement of Facts

*Movant.* Diane Solano ("Diane") is a 56-year-old resident of one of the State Centers, at White Haven. She has been diagnosed as having "profound mental retardation," and has an intelligence quotient below 20 and a mental age at or below 1 year. Because of her incapacity, she files this motion (and is also filing her objections to the settlement) by and through her brother, Carl A. Solano, Esquire ("Objector," or "Carl"). Carl was appointed Diane's legal guardian on July 20, 2004, by an order of the Court of Common Pleas of Luzerne County, *In re Diane Solano*, No. 3215 of 1998 (C.P. Luzerne 2004), as the successor to Diane's parents, her original guardians.

Because of Diane's mental and intellectual incapacity, she is in need of 24-hour care for all of her daily needs, including food, clothing, bathing, and toilet activities. Diane has limited comprehension skills, and no comprehension of everyday dangers. She is quiet, passive, and non-verbal, and cannot communicate her wants or needs. Diane's mental retardation stems from Down's Syndrome, and, like other aging Downs victims, she has early stages of dementia and possible Alzheimer's disease. She has also developed other physical conditions that require daily medications and physician and nursing care.

Diane has resided at the White Haven Center all of her adult life, and it is what she knows as her home. She moved to the White Haven Center on August 25, 1965, and her daily behavior since that time shows that she knows and feels comfortable with White Haven's staff and physical surroundings. From all outward indications, the familiarity of Diane's surroundings is an important and valuable part of her life.

Because of Diane's condition, her guardians consistently have concluded that the most appropriate setting for her care is White Haven. In the 46 years she has lived there, Diane has received excellent care that has accommodated her special needs. White Haven has been able to provide such care because it has both the facilities and the 24-hour staff support that is required to care for "profoundly retarded" individuals. Objector is unaware of "community" facilities that could provide similar support of the same quality.

*The settlement.* The terms of the settlement are presented in the motion for approval of the settlement that was filed by plaintiffs, and a copy of the settlement agreement is an exhibit to that motion.

The settlement calls for the Department of Public Welfare (DPW) and plaintiffs' counsel to assess all State Center residents' opposition to being moved out of the Centers and into community facilities. Those who do not express unalterable opposition to being relocated to a community facility (that is, who do not say that they "do not or would not" oppose relocation) will be placed on a Planning List for relocation. That includes any individuals who remain silent on the question, even if their silence results from inability to comprehend what is being asked.

Those on the Planning List will receive "training" about the benefits of community placements under a program to be set up by a "Community Partnership Steering

Committee" consisting of representatives of plaintiffs' counsel, provider representatives, DPW, and others. Plans for community placements, support, and services then will be devised as part of a broader "Integration Plan" that is to move 400 State Center residents to community facilities in the next five years. Unless an individual otherwise requests, the placements will be in facilities housing no more than four individuals. Meanwhile, DPW is to shift funds from the State Centers' budgets to community programs. This Court would retain jurisdiction to enforce the settlement, and plaintiffs' counsel will be paid $432,500 in counsel fees.

Without evidence, the settlement assumes that all State Center residents are capable of being relocated to community facilities, even though 74% of them are profoundly retarded like Diane. The record contains no evidence that there are sufficient facilities available to care for such individuals, including facilities capable of providing the intensive 24-hour care that "profoundly retarded" individuals need. The settlement is unclear about what right individuals on the Planning List may have to select the facility to which they would be transferred, and it makes no provision for return of individuals to the State Centers from the community if it is found that their relocation was improvident. The settlement does not provide for reports about whether the relocated individuals are receiving appropriate care or whether any of them incur physical or other harm in the community facilities — one of the major concerns of opponents of community care. Nor does it make any provision to protect those State Center residents who elect to remain in the Centers from having the quality of their care reduced or otherwise impaired after the 400 residents are removed from them, even though it calls for diversion of state funding from the Centers to community services.

***Diane's objections.*** Objector is filing objections on Diane's behalf to raise the issues discussed above, among others. As noted, Objector believes that White Haven currently is

the most appropriate facility for Diane and therefore currently opposes her relocation to the community. However, because of uncertainty about what may happen to the State Centers if the settlement is implemented, and, in particular, about whether they will be able to continue to administer the same quality of excellent care that they have provided in the past, Objector reluctantly agrees that he might not oppose community relocation in the future if that becomes a better alternative. For this reason, Objector believes Diane is entitled to file objections as a member of the class (that is, as someone who "would not" oppose community placement in the future if conditions at the State Centers change for the worse).

However, because Objector currently opposes Diane's relocation and has made that fact known, plaintiffs plan to argue that Diane should not be allowed to file objections as a member of the class. They confirmed that position this morning in an e-mail from their counsel stating their non-concurrence in this motion. The e-mail states: "Just to be abundantly clear, it is Plaintiffs' contention that you do not have standing to object to the settlement because you oppose community services for your sister and therefore, are not a class member. We do not accept that you have the right to object to the settlement agreement." E-mail, R. Meek to C. Solano, July 28, 2011, 8:55 a.m. In light of plaintiffs' position, Objector is filing this motion to intervene as an alternative means of protecting his right to object on behalf of Diane.

**Statement of Question Involved**

Should Diane Solano, by and through her guardian Carl A. Solano, be permitted to intervene for the limited purpose of objecting to and being heard about the class settlement.

**Argument**

Diane seeks to intervene in this action only for the limited purpose of having this Court hear and determine her objections to the class settlement. And she makes this motion only in the alternative; if the Court agrees that Diane has a right to have her objections heard and considered because she is a member of the class, then this motion is unnecessary and need not be decided. *See generally Carlough v. Amchem Prods., Inc.*, 5 F.3d 707 (3d Cir. 1993) (intervention unnecessary for objecting class members).

The Court of Appeals has instructed that "permitting persons to appear in court, either as friends of the court or as interveners for a limited purpose, may be advisable where third parties can contribute to the court's understanding of the consequences of the settlement proposed by the parties." *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir.), *cert. denied*, 484 U.S. 947 (1987). Intervention is an appropriate way to preserve objections to a class settlement if the objector is not recognized as otherwise having a right to participate. *See*, *e.g.*, *Marino v. Ortiz*, 484 U.S. 301 (1988); *Gaskin v. Pennsylvania*, 197 Fed. Appx. 141 (3d Cir. 2006). Accordingly, courts have granted motions to intervene for the limited purpose of having class settlement objections heard. *See*, *e.g.*, *Uhl v. Thoroughbred Tech. & Telecoms., Inc.*, 2001 U.S. Dist. LEXIS 13115, *47-*49 (S.D. Ind. 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002); *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 688-91 (D. Minn. 1994); *see also Tennessee Assn. of Health Maintenance Orgs. v. Grier*, 262 F.3d 559 (6th Cir. 2001).

A. **Diane Solano Should Be Permitted To Intervene as of Right for the Limited Purpose of Objecting to the Class Action Settlement.**

Under Rule 24(a) of the Rules of Civil Procedure, an individual may intervene as of right if "(1) the application for intervention is timely; (2) the applicant has a sufficient interest

in the litigation; (3) the interest may be affected or impaired, as a practical matter, by disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris*, 820 F.2d at 596. A petition to intervene to object to a class settlement is timely if, as here, it is made within the time for responses set forth in a class action settlement notice. *In re Community Bank of Northern Virginia*, 418 F.3d 277, 314-15 (3d Cir. 2005) (permitting intervention motion filed within time set in settlement notice for opt-outs). And since, by definition, the parties to a settlement agreement will not be representing the interests of an objector to the settlement like Diane, the interests of Diane are not adequately represented here. Diane's right to intervene as of right therefore turns on whether she has an interest at issue here and whether that interest may be affected or impaired by the settlement.

Diane's interest is in her right to appropriate care under *Olmstead*, a right that is implicated in a variety of ways by the settlement agreement. First, that agreement sets up procedures for determining whether Diane and other State Center residents should be relocated to community facilities. Diane has an interest in being sure that those procedures adequately protect her interest in maintaining appropriate care. As discussed in Diane's objections, the settlement raises serious questions about whether proper measures are being put in place to assure that only those individuals that are capable of living in the community are moved to the community and that those who oppose relocation or who are incapable of stating any preference are not relocated inappropriately. As just one example, the terms of the agreement cast doubt on whether State Center residents and their families (including Diane and Objector) will be provided with objective information about their alternatives that will enable them to decide what is best, or will merely receive one-sided promotional materials intended to steer them out of the State Centers and into community facilities. Diane has an interest in being sure that any decision-making pursuant to the settlement is done in her best interest and is informed by full,

unbiased, and objective information. Some of her objections are directed to preservation of this interest.

Second, Diane has an interest in assuring that if she were to agree to consider community placement, her right to the most appropriate such placement will be protected. In this connection, the settlement presents serious questions about the availability of community facilities that can provide the 24-hour care Diane would need and about how much say Objector would have in choosing any specific community facility in which she would be placed. The settlement also raises serious questions about protection of Diane's rights after she is relocated to a community facility. For example, there is no provision for periodic reports about whether any community residents are subjected to physical harm, even though the risk of such harm is one of the principal concerns of those considering relocation. Nor is there any provision for a return to a State Center if it turns out that the community facility to which Diane is relocated turns out not to be the most appropriate place for her care. Although the settlement purports to advance the interests of Diane and others to move to community settings, it does nothing to assure for Diane's safety and protection once she exercises that option.

Third, Diane has an interest under *Olmstead* in continuing to live in an institutional facility if that is best for her, but, again, the settlement makes no provision to protect this interest. It was this interest in choosing to stay in the State Centers that this Court considered when the nine State Center residents sought to intervene last year. Although the Court held that this interest was not threatened at that time, it did recognize that this indeed is an interest that deserves protection. 267 F.R.D. at 462 ("states need to maintain a range of facilities for the care and treatment of persons with diverse mental disabilities," including institutional care, under *Olmstead*). The Court was correct to do so.

Pennsylvania courts have recognized an interest of mentally incapacitated individuals under Pennsylvania state law to remain in their institutional homes. *See*, *e.g.*, *In re Bear*, 44 Pa. D.&C. 4th 225, 260 (C.P. Dauphin 1999); *In re Easly*, 46 Pa. D.&C. 4th 374 (C.P. Venango 2000), *aff'd*, 771 A.2d 844 (Pa. Cmwlth.) (en banc), *appeal denied*, 567 Pa. 731, 786 A.2d 991 (2001). This interest applies directly to Diane, who has resided at White Haven Center for 46 years. Of even greater significance here, the U.S. Supreme Court in *Olmstead* held that there is a significant interest in maintaining an institutionalized residence in the context of an ADA action like this one seeking to move residents to the community. 527 U.S. at 583. The lead *Olmstead* opinion by Justice Ginsberg (joined by Justices O'Connor, Souter, and Breyer) stated, "the ADA is not reasonably read to impel States to phase out institutions, placing patients in need of close care at risk." *Id.* at 604. "[N]othing in the ADA or its implementing regulations condones termination of institutional settings for persons unable to handle or benefit from community settings"; "[n]or is there any federal requirement that community-based treatment be imposed on patients who do not desire it." *Id.* at 602 (portion of opinion also joined by Justice Stevens). In his concurrence, Justice Kennedy (joined by Justice Breyer) cautioned that those needing institutional care must be protected and that ADA actions may not be used to drive them from it. *Id.* at 609-10. Justice Ginsberg agreed, observing that it is not "the ADA's mission to drive States to move institutionalized patients into an inappropriate setting," since, for some individuals, "no placement outside the institution may ever be appropriate." *Id.* at 605.

Although recognizing this right to institutional care under *Olmstead*, this Court denied intervention last year because it held that the right was not then implicated, since the part of the class definition that includes as class members only those who "do not or would not oppose community placement" seemed to protect the putative intervenors by enabling them, in effect, to opt out of the class. 267 F.R.D. at 460-63. A controlling question on this motion is

whether, with respect to the class settlement, this interest now is so affected or impaired that intervention for the limited purpose of objecting to the settlement should be allowed. The facts of the settlement demonstrate that it is.

The settlement calls for 400 residents of the State Centers — about one-third of their populations — to be moved to community facilities. It makes no provision for individualized determinations of whether each resident is capable of being relocated to the community, being based instead on an assumption (and an agreement by the parties) that all of them can be. And although it purports to protect those who oppose relocation from having to move, it provides that any resident who does not explicitly state such opposition will be deemed eligible for relocation — even those who say nothing merely because they are incapable of understanding the question and are intellectually capable of making a choice. There are many such individuals, since 74% of all residents in the Centers are diagnosed as "profoundly retarded" like Diane. The result of all of this is that many individuals may be moved out of the State Centers even though they should not be. And as the Centers' populations are depleted, questions are sure to arise about whether the Commonwealth can afford to continue to provide the Centers with the financial resources necessary for them to continue to be able to provide quality care for those residents who remain.

When such concerns were raised by the putative intervenors last year, the Court held they were too speculative to merit intervention. In particular, the Court noted, there should be no concern that the State Centers would be closed because *Olmstead* requires that the states continue to provide institutional facilities to those who need them. 267 F.R.D. at 462 n.6. But even assuming that is correct (and Diane fervently hopes that it is), there remains a substantial concern that the Centers will face a reduction of financial resources that will force a reduction in

the care that they offer.  And the settlement makes clear that this concern is *not* speculative. The settlement agreement, at ¶ 2.c. provides, "DPW to the extent feasible will shift funds from the carry-forward budget for state ICFs/MR to the Community Waiver services budget."  The settlement thus obligates defendants to take money away from the State Centers and to turn it over to community services programs instead.  That provision of the settlement necessarily will have an adverse effect on the State Centers.

These consequences clearly should give State Center residents like Diane an interest in having their objections to the settlement heard.  Contrary to what may have been the case when the Court declined to permit intervention last year, these consequences no longer are speculative in light of the settlement, and that they deserve consideration.

All of the foregoing *Olmstead* issues are interrelated, and all of them are directly affected by the settlement.  Class members are being asked to make critical decisions about whether to stay in the State Centers or to move out, and their choices necessarily require a comparison of the risks and benefits of each location.  Those risks and benefits will depend in part on the resources available, and those resources will depend on how any remedy is structured and what this Court orders.  In light of these different factors, the class members do not (as plaintiffs argue) divide neatly into those unalterably favoring the State Centers and those unalterably seeking community placement.  The third part of plaintiffs' class definition — the part on which the Court relied last year to deny intervention — asks only whether class members "would not oppose community placement" in all circumstances, thus inviting class members (like Objector) to acknowledge that there might be situations in which they would not object, depending on all of the circumstances at the time.  Those circumstances include the relative risks and benefits under *Olmstead*.

This interrelationship of issues under *Olmstead* is why the district court in *Ligas ex rel. Foster v. Maram*, 2010 U.S. Dist. LEXIS 34122 (N.D. Ill., Apr. 7, 2010) ("*Ligas III*"), the long-running Illinois litigation to which this Court referred in its opinion denying intervention, ***permitted*** those opposed to community relocation to be heard when considering a proposed class settlement in that case, even though it had denied them intervention in the case's earlier phase. In this Court's intervention decision, it relied on the Seventh Circuit's affirmance of the denial of intervention in *Ligas* on the basis of an opt-out provision in the class definition that was similar to the one used by plaintiffs here. 267 F.R.D. at 462-63. But after that affirmance, the parties removed that opt-out provision because it impermissibly required individualized proof, and the district court then decertified the *Ligas* class. The plaintiffs in *Ligas* then proposed a new class definition as part of a new settlement, and again those opposed to relocation moved to intervene. This time, the district court ***granted*** the intervention motion, agreeing that the intervenors had an interest under *Olmstead* in assuring that their needs of institutional residence "be considered in determining the State's obligation to provide the 'community-based' services" at issue. *Ligas III*, 2010 U.S. Dist. LEXIS 34122, at *11. The decision in *Ligas III* was rendered one month after this Court's March 10, 2010 intervention decision, and this Court therefore did not have the benefit of it.

The court in *Ligas III* explained that the Supreme Court in *Olmstead* was "very much aware of competing claims on limited State resources" and required those resources to be taken into account along with "the needs of others with mental disabilities." *Id.* at *13-*14, *quoting (second quote)* 527 U.S. at 607. In view of these considerations, the court concluded that "the Proposed Intervenors have a right under *Olmstead* to have their needs considered" in connection with consideration of the proposed settlement. *Id.* at *14 (emphasis added).

Otherwise, their "future ability to have their needs considered in balance with the State's obligations to other individuals with mental disabilities would be significantly impaired 'as a practical matter.'" *Id.* at \*16-\*17 (quoting Fed. R. Civ. P. 24). Since the State planned to reduce institutional capacity upon approval of a settlement relocating residents to "community" facilities, the litigation implicated the intervenors' interests in their "care and placement," the quality of the essential services and supports provided to them, and the "financial viability of their selected living arrangement" — what the court collectively called an interest "in the equitable distribution of State resources among individuals with mental disabilities." *Id.* at \*18-\*20. The court also held that the intervenors had an interest in participating in decisions about certification of a new class, since, even if the intervenors were excluded from the class under the plaintiffs' re-revised class definition, the *Ligas* parties were soliciting institutional residents to see if they would withdraw their opposition to relocation, and such class identification procedures would impact the intervenors' rights. *Ligas III*, at \*23-\*25.

The same is true here. As in *Ligas III*, this litigation implicates all class members' interests in their "care and placement," the quality of the essential services and supports provided to them, and the "financial viability of their selected living arrangement." All class members, including those like Diane who presently may not favor relocation, therefore have a right to be heard.

The Third Circuit's affirmance of this Court's denial of intervention does not call for a contrary conclusion. The settlement had not been negotiated at the time of the Court of Appeals' decision, and the settlement's terms, such as a requirement for a transfer of funds from the State Centers, were not known. The facts have changed since the Court of Appeals' decision,

and, in light of the limited nature of Diane's motion, the applicable legal standards are different as well.

Unlike last year's intervention motion, this motion asks that Diane be allowed to intervene only so that her objections to the class settlement may be heard under the standards applicable to class settlement fairness hearings. When considering the fairness of a class settlement, this Court "acts as a fiduciary, guarding the claims and rights of the absent class members." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) (citing cases). In doing so, it can only benefit from the views of all of those will be affected by the settlement. *See Harris*, 820 F.2d at 603. The Court therefore should exercise its discretion to permit Diane to intervene as of right for the limited purpose of objecting to the settlement.

### B. Alternatively, Diane Solano Should Be Permitted To Intervene Permissively for the Limited Purpose of Objecting to the Class Action Settlement.

Under Rule 24(b)(1)(B), the Court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Diane certainly meets this test, since she raises concerns about her right to care under *Olmstead* that she shares in common with other members of the class. As this Court held in last year's intervention decision, whether the Court should grant intervention on this basis depends on whether the proposed intervenor will add anything new to the case or will delay or prejudice others' rights. 267 F.R.D. at 465 (citing authorities).

Once again, the fact that Diane seeks to intervene only for the limited purpose of objecting to the settlement weighs strongly in favor of permitting her to intervene here. By intervening, she seeks to file objections within the time set by this Court's order, so that her

intervention will not cause delay.  Her objections will present issues that the parties, having agreed to the settlement, will not present, and so they add something new.  And they will not prejudice anyone, since they raise issues of interest and concern to all class members.  For these reasons, even if the Court denies intervention as of right, it should permit Diane to intervene under Rule 24(b).

### Conclusion

For all of the foregoing reasons, Diane Solano, by and through her guardian Carl A. Solano, should be permitted to intervene for the limited purpose of objecting to the settlement and presenting those objections at the fairness hearing.

> Respectfully submitted,
> /s/ *Carl A. Solano*
> Carl A. Solano, I.D. No. PA 23986
> SCHNADER HARRISON SEGAL & LEWIS LLP
> 1600 Market Street, Suite 3600
> Philadelphia, PA 19103
> Telephone: (215) 751-2000
> Fax:  (215) 972-7363
> E-mail:  *CSolano@Schnader.com*

Dated:  July 28, 2011.