**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

```
-------------------------------------------------------------x
FRANKLIN BENJAMIN, et al., on behalf of      :
themselves and all others similarly situated,  :
                                             :
              Plaintiffs,                     :
                                             :        No. 09-cv-01182
              -against-                       :        (Jones, U.S.D.J.)
                                             :
DEPARTMENT OF PUBLIC WELFARE OF              :        (Am. Complaint
THE COMMONWEALTH OF                          :        Filed 7/14/09)
PENNSYLVANIA, et al.,                        :
                                             :
              Defendants.                     :
-------------------------------------------------------------x
```

**MEMORANDUM IN SUPPORT OF MOTION OF CRAIG SPRINGSTEAD, MARIA MEO, DANIEL BASTEK, MICHAEL STORM, BETH ANN LAMBO, RICHARD KOHLER, MARIA KASHATUS, AND WILSON SHEPPARD TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**

John E. Riley
William J. Murray, Jr.
VAIRA & RILEY, P.C.
1600 Market Street, Suite 2650
Philadelphia, Pennsylvania  19103
(215) 789-9405
(215) 751-9420 (fax)

And

Benjamin J. Hoffart
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York  10019
(212) 839-5300
(212) 839-5599 (fax)

*Attorneys for Craig Springstead, Grace Meo, Daniel Bastek, Michael Storm, Beth Ann Lambo, Richard Kohler, Maria Kashatus, and Wilson Sheppard*

## <u>TABLE OF CONTENTS</u>

**Page**

I.  THE SPRINGSTEAD OBJECTORS SHOULD BE ALLOWED TO INTERVENE
    AS A MATTER OF RIGHT................................................................................8

    A.    The Springstead Objectors' Application is Timely. .................................9

    B.    The Springstead Objectors Have an Interest in Selecting the Form of Care
          Most Appropriate to Their Individual Needs.............................................9

    C.    The Springstead Objectors' Legally Recognized Interests are at Risk in the
          Present Litigation. ..................................................................................11

    D.    The Springstead Objectors' Interests Are Not Adequately Represented in the
          Litigation.................................................................................................15

II. THE SPRINGSTEAD OBJECTORS ALSO SATISFY THE CRITERIA TO
    INTERVENE BY PERMISSION.....................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amerimar Cherry Hill Assocs., L.P. v. U.S. Fidelity & Guar. Co.*,
No. 90-3354, 1991 WL 137153 (E.D. Pa. July 22, 1991) .......................................................9

*Brody ex rel. Sugzdinis v. Spang*,
957 F.2d 1108 (3d Cir. 1992)...............................................................................................17

*Cont'l Cas. Co. v. SSM Group, Inc.*,
No. 94-7789, 1995 WL 422780 (E.D. Pa. July 13, 1995) ....................................................17

*Hyland v. Harrison*,
No. Civ.A. 05-162-JJF, 2006 WL 288247 (D. Del. Feb. 7, 2006) .........................................10

*In re Bear*,
44 Pa. D. & C. 4th 225 (C.P. Dauphin 1999) .......................................................................11

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005)...............................................................................................9, 10

*In re Easly*,
46 Pa. D. & C. 4th 374 (C.P. Venango 2000), *aff'd* 771 A.2d 844 (Pa. Cmmw. Ct.
2001) (en banc) ....................................................................................................................11

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998)..................................................................................................9

*NLRB v. Frazier*,
144 F.R.D. 650 (D.N.J. 1992)...............................................................................................9

*Olmstead v. L.C. ex rel. Zimring*,
527 U.S. 581 (1999)........................................................................................................ passim

OTHER AUTHORITIES

28 C.F.R. § 35.130(e)(1)..........................................................................................................10

Federal Rule of Civil Procedure 24(a)(2) ..............................................................................9, 18

Federal Rule of Civil Procedure 24(b)...................................................................................17, 18

Craig Springstead, by and through his father and guardian, Bertin Springstead, Maria

Meo, by and through her mother and guardian, Grace Meo, Daniel Bastek, by and through his

father and guardian, John Bastek, Michael Storm, by and through his guardian, Polly Spare, Beth

Ann Lambo, by and through her father and guardian, Joseph Lambo, Richard Kohler, by and

through his sister and guardian, Sara Fuller, Maria Kashatus, by and through her father and

guardian, Thomas Kashatus, and Wilson Sheppard, by and through his brother and next friend,

Alfred Sheppard (collectively, the "Springstead Objectors"), by and through their counsel, Vaira

& Riley, P.C. and Sidley Austin LLP, hereby submit this memorandum in support of their

Motion to Intervene in the above-captioned matter.

## FACTS AND PROCEDURAL HISTORY

### A.     Commencement of the Lawsuit and the Unopposed Class Certification.

This action was commenced on June 22, 2009, by the five named Plaintiffs alleging in

their Complaint (Dkt. #1) that the manner in which Pennsylvania provides services to the

developmentally disabled violates the Americans with Disabilities Act, the Rehabilitation Act,

and the Supreme Court's decision in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).  In

their first and Amended Complaints (Dkt. #9), Plaintiffs primarily complain that the Defendants'

provision of services in public intermediate care facilities for the mentally retarded ("ICFs/MR")

– comprehensive facilities that combine residential, recreational, and medical care in one facility

– violates the Supreme Court's *Olmstead* holding that persons with developmental disabilities

have the right to *choose* to live in the "most integrated setting appropriate" to their needs and

desires.  The five Plaintiffs alleged in their Amended Complaint that ICF/MR care is not

"appropriate to the needs of *any* individual resident of those facilities," and sought relief on

behalf of a class including:

> All persons who: (1) currently or in the future will reside in one of Pennsylvania's state-operated intermediate care facilities for persons with mental retardation; (2) could reside in the community with appropriate services and supports; and (3) do not or would not oppose community placement.

(Am. Compl., Dkt. #9, at ¶¶ 57, 65-66.)  No analysis or evaluation of the purported class was made at that time, or indeed, even today.  Accordingly, Plaintiffs' allegation that ICF/MR care is not appropriate for anyone is based exclusively upon an ideological position, not medical analysis.

Based on this unsupported, but also unchallenged, assumption that community care is the only appropriate "choice" for the developmentally disabled and their families, Plaintiffs filed an Unopposed Motion to Certify a Class on August 31, 2009 without conducting any discovery, survey, or analysis to determine how many of the approximately 1,200 individuals in public ICFs/MR desire or actually could benefit from community care.  Moreover, no one made any effort to contact the legal guardians of ICF/MR residents, who – unlike Plaintiffs' counsel – are the individuals with the legal right to make such placement decisions.  Rather, Plaintiffs' Amended Complaint states that the class is intended to include all or virtually all of the more than 1,200 individuals residing in ICF/MR care at the time this case was initiated.  (Dkt. #9, at ¶ 16.)  Defendants conceded this point without caveat, exception, or clarification, and did not oppose Plaintiff's motion for class certification on this or any other ground.  The Court certified the class two days later.  (Dkt. #17.)

### B.    The Springstead Objectors.

Craig Springstead is a 50-year-old resident of Selinsgrove Center, a public ICF/MR that has been his home for 28 years.  (Intervenors' Resp. to Am. Compl., Dkt. # 28, ¶ A.)  Mr. Springstead has been diagnosed with moderate mental retardation, bipolar disorder, mood disorder with psychotic features, generalized anxiety disorder, and intermittent explosive

disorder. (*Id.*) Michael Storm is a 56 year-old resident of Hamburg Center, a public ICF/MR, who is developmentally disabled and is dependant upon both tracheotomy and feeding tubes. (*Id.*, ¶ D.) Beth Ann Lambo is a 43-year-old resident of Polk Center, a public ICF/MR, where she has lived for 40 years. (*Id.*, ¶ E.) Ms. Lambo has been diagnosed with profound mental retardation, autism, and disruptive behavior disorder; she has a mental age of 18 months and is unable to detect danger. (*Id.*) Richard Kohler is a 60-year-old resident of Selinsgrove Center – where he has lived since 1968 – who is developmentally disabled, deaf, and blind. (*Id.*, ¶ G.) Both Maria Kashatus and Wilson H. Sheppard are in their forties, have been residents of White Haven Center, a public ICF/MR, for most of their lives, and are developmentally disabled and non-verbal; Ms. Kashatus is also restricted to a wheelchair. (*Id.*, ¶¶ H, I.) Maria Meo is a 51-year-old resident of Ebensburg Center, which has been her home since 1967. (*Id.*, ¶ B.) She is developmentally disabled but independent and able to make her wishes known. (*Id.*) Finally, Daniel Bastek is a 38-year-old resident of Hamburg Center, where he has lived for 20 years; he has been diagnosed with moderate mental retardation, bipolar disorder, and pervasive developmental disorder. (*Id.*, ¶ C.) The Springstead Objectors have not and do not oppose Plaintiffs' right to choose community care for themselves, but have and continue to object to Plaintiffs' blanket pursuit of class-wide relief that will impair the Springstead Objectors' interest in preserving their individual right to choose ICF/MR care.

**C.     The Springstead Objectors' Attempts to be Heard.**

Recognizing that neither Plaintiffs nor Defendants represented the interests of ICF/MR residents who do not want to be forced into community care, the Springstead Objectors – residents of ICFs/MR who do not wish to be forced out of their current homes and do not believe

that community placement provides the best or most appropriate care option for them – moved to intervene. (Dkt. #27.)[1]

Plaintiffs opposed the Springstead Objectors' intervention (Dkt. #34), and on March 10, 2010, the Court denied the Springstead Objectors' motion based upon findings that (1) "the definition of the [certified class] specifically excludes [those who] oppose community placement," (2) that Defendants adequately represented the Springstead Objectors' personal interests simply by defending the suit on the ground that DPW does not have funding to provide all of the accommodations sought by Plaintiffs, and (3) that the Springstead Objectors' views "would not sufficiently add anything to the litigation." (Mem. & Order, Dkt. #41.)

The Springstead Objectors timely filed an appeal of the Court's Order with the Third Circuit Court of Appeals on March 30, 2010. (Dkt. ## 42, 43.) Before the Third Circuit issued a briefing schedule, Plaintiffs and Defendants filed cross-motions for Summary Judgment with the Court on June 23, 2010 and June 29, 2010. (Dkt. ## 48, 51.) After settlement negotiations before a federal Magistrate Judge failed to resolve the case, the Court issued a Memorandum and Order on January 27, 2011, holding that Defendants are not in compliance with the integration mandates of the ADA and Rehabilitation Act, thereby granting, with respect to liability only, Plaintiffs' Motion for Summary Judgment and scheduling further proceedings to determine the appropriate scope of injunctive relief. (Dkt. #88.) On April 5, 2011, the Third Circuit Court of Appeals entered a judgment affirming the Court's March 10, 2010 Order denying the Springstead Objectors' proposed intervention. (Dkt. #98.)

---

[1] At the time of their original, proposed intervention, the Springstead Objectors were defined and referred to as the "Springstead Intervenors." In addition to those residents currently defined as the Springstead Objectors, the Springstead Intervenors included Mr. Richard Clarke, a 52 year-old resident of the Polk center who passed away earlier this year.

**D.**     **The Proposed Settlement**

Shortly thereafter, on April 29, 2011, the Court indicated in an Order that Plaintiffs and Defendants had given the Court notice that a settlement had been reached.  (Dkt. #102.)  On May 26, 2011 Plaintiffs filed an Unopposed Motion for Preliminary Approval of the Proposed Class Action Settlement.  (Dkt. #105.)  The Court granted Plaintiffs' Motion, preliminarily approving the settlement the next day, May 27, 2011 (Dkt. #106), and scheduled a fairness hearing for August 22, 2011.

**STATEMENT OF QUESTION INVOLVED**

Whether the Springstead Objectors are entitled to intervene in this matter pursuant to Rule 24 of the Federal Rules of Civil Procedure, when their application is timely, where they have legally protectable interests that will be impaired by the resolution of this lawsuit, and where those interests are not adequately represented by any party to the litigation.

**ARGUMENT**

**I.**     **THE SPRINGSTEAD OBJECTORS SHOULD BE ALLOWED TO INTERVENE AS A MATTER OF RIGHT.**

To intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2), "the prospective intervenor must establish that: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation."  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005) (citation omitted); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).  "Rule 24(a) is to be liberally construed in favor of intervention," and any party who meets these criteria "must" be permitted to intervene.  *NLRB v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992) (citations omitted); Fed. R. Civ. P. 24(a)(2); *see also Amerimar*

8

*Cherry Hill Assocs., L.P. v. U.S. Fidelity & Guar. Co.*, No. 90-3354, 1991 WL 137153, at *4

(E.D. Pa. July 22, 1991) ("Rule 24(a)(2) restricts the district court's discretion by providing that

an applicant shall be permitted to intervene if he or she satisfies the requirements of the Rule.")

(citing *Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987)).  The Springstead Objectors satisfy each

of these elements and should be allowed to intervene in the present action as a matter of right.

      **A.**     **The Springstead Objectors' Application is Timely.**

      The present application is timely because the Springstead Objectors primarily seek to

intervene in the present action to object to the proposed settlement agreement and this

application is filed before the Court-approved period for objecting to that settlement agreement

has expired.  In considering whether an application is timely, the factors the court considers are:

"(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the

reason for the delay." *Cmty. Bank of N. Va.*, 418 F.3d at 314 (citation omitted); *see also Hyland*

*v. Harrison*, No. Civ.A. 05-162-JJF, 2006 WL 288247, at *4 (D. Del. Feb. 7, 2006) (citation

omitted). Notably, a petition to intervene is considered timely when, as here, intervention is

sought within the time for responses set forth in a class action settlement.  *Cmty. Bank of N. Va.*,

418 F.3d at 314-15.

      **B.**     **The Springstead Objectors Have an Interest in Selecting the Form of Care**
                   **Most Appropriate to Their Individual Needs.**

      The Springstead Objectors have a legally-recognized interest in preserving their ability to

select institutional care as the most appropriate form of care for their individual needs.  In

*Olmstead v. L.C. ex rel. Zimring*, the United States Supreme Court found that disabled

individuals possess a significant interest in maintaining their institutional care environments.

Notably, the Supreme Court recognized that "the ADA is not reasonably read to impel States to

phase out institutions, placing patients in need of close care at risk."  *Olmstead*, 527 U.S. at 604.

Moreover, *Olmstead* expressly rejected the one-size-fits-all approach advocated by Plaintiffs and recognized that community-based care is not always the most appropriate form of care for all mentally-disabled individuals:

> Unjustified isolation, we hold, is properly regarded as discrimination based on disability.  But we recognize, as well, the States' need to maintain a range of facilities for the care and treatment of persons with diverse mental disabilities.

*Olmstead*, 527 U.S. at 597.  Both *Olmstead* and the applicable federal regulations affirm the Springstead Objectors and other ICF/MR residents have a right to choose institutional care over community-based care.  *Id.* at 602 (holding there is no "federal requirement that community-based treatment be imposed on patients who do not desire it") (citing 28 C.F.R. § 35.130(e)(1) (1988) ("Nothing in this part shall be construed to require an individual with a disability to accept an accommodation . . . which such individual chooses not to accept."); 28 C.F.R § 35, App. A, p. 450 (1998) ("[P]ersons with disabilities must be provided the option of declining to accept a particular accommodation.")).  As the Olmstead court observed, "it [is not] the ADA's mission to drive States to move institutionalized patients into an inappropriate setting" and "for [some] individuals, no placement outside the institution may ever be appropriate."  *Olmstead*, 527 U.S. at 605.

The Springstead Objectors are each in need of close, constant care and are unable to live in community care facilities.  As they are entirely reliant on the care provided in the ICFs/MR that have been their homes for 20, 30, even 40 years,[2] the Springstead Objectors have a clearly defined interest in preserving ICF/MR care and to resist efforts to impose inappropriate care arrangements upon them.

---

[2] Pennsylvania law recognizes a right of developmentally disabled residents of institutional facilities to remain in the facilities they call home.  *See In re Easly*, 46 Pa. D. & C. 4th 374, 412-14 (C.P. Venango 2000), *aff'd* 771 A.2d 844 (Pa. Cmmw. Ct. 2001) (en banc); *In re Bear*, 44 Pa. D. & C. 4th 225, 260 (C.P. Dauphin 1999).

**C.      The Springstead Objectors' Legally Recognized Interests are at Risk in the Present Litigation.**

The Springstead Objectors' legally-recognized interests are in imminent danger in the present litigation.  First, the proposed settlement agreement, if approved, will prevent the Springstead Objectors from selecting the form of care that is appropriate to their individual needs.  This right was explicitly recognized by the Supreme Court in *Olmstead* when it held that that the Americans with Disabilities Act affords persons with developmental disabilities the right to choose to live in the "most integrated setting appropriate," taking into account the available resources and the individual's desires and needs.  527 U.S. at 595.

If the proposed settlement is approved, however, the Springstead Intervenors and other ICF/MR residents will be required to affirmatively oppose community placement, even though most ICF/MR residents are not capable of making and communicating care decisions.  Under the protocol established by the proposed settlement, ICF/MR residents will undergo an annual assessment in which either an ICF/MR social worker or a "Community Transition Specialist," working with a DRN-employed Facility Advocate will determine who has opposed community placement.  (*Id.* at III.2.a.)  If an ICF/MR resident "does not express opposition to *considering* community placement" during this assessment, he or she will be placed on a list prioritizing them for community placement.  (*Id.* at III.2.b.)  ICF/MR residents that do not affirmatively express opposition to community placement will be removed from this list only when involved family members or guardians make their affirmative opposition to community placement known.  (*Id.* at III.2.b.1 & III.2.b.2.)

While *Olmstead* found that the ADA guarantees that the developmentally disabled may choose to live in the most integrated settings appropriate to individuals' desires and needs, the

proposed settlement plan envisions that ICF/MR residents who have expressed *no indication* that they desire community placement will be prioritized for community placement.  The proposed settlement misconstrues the tenet of affirmative choice that is the hallmark of the Supreme Court's *Olmstead* decision.  As the *Olmstead* court made clear, there is no "federal requirement that community-based treatment be imposed on patients who do not desire it."  527 U.S. at 602.

In reality, the proposed settlement provides that the majority of decisions concerning whether institutional or community care represents the "most integrated setting" appropriate to ICF/MR residents' needs will be made, not by the residents or their guardians, but by persons employed by Plaintiffs' DRN counsel.  As the statistics maintained by the state ICFs/MR show, 890 of the 1,207 current residents of ICFs/MR are classified as possessing a profound mental disability.[3]  These same statistics show that 712 of the 1,207 current ICF/MR residents are classified as "non-verbal."  Thus, nearly 75% of the current residents of state-run ICFs/MR will be unable to express any opposition to community placement.

Moreover, the vast majority of current ICF/MR residents unable to voice their opposition to community placement do not have legal guardians to state that opposition on their behalf.  As the statistics Plaintiffs provided in support of their motion for summary judgment reveal, 1004 of the 1,223 residents of state-run ICFs/MR – 82% of the ICF/MR population – did not have a legal guardian.  The settlement agreement also fails to provide any assurance that guardians' or family members' opposition to community care will have any permanence in the event that the guardian or family member passes away or is otherwise unable to voice their annual opposition to community care for their ward or loved one.  Thus, the procedure outlined in the proposed settlement agreement realistically provides that the choice between ICFs/MR and community

---

[3] These state center demographics previously were provided to the Court as exhibits to the Springstead Objectors' Supplemental Objections.  (*See* Dkt. #221, Ex. 2.)

care will be made for most ICF/MR residents by employees of DRN who categorically believe that state-operated ICFs/MR are not the most integrated settings appropriate to the needs of *any* individual resident of those facilities.  (*See* Pl. Amend. Compl., Dkt. #9, ¶ 66.)

The Court determined previously that the Springstead Objectors' opposition to community care excludes them from the relief sought by Plaintiffs, but as the proposed settlement makes clear, there is no guarantee that the Springstead Objectors' present opposition will have any permanence if their guardians and loved ones somehow become unable to express their opposition to community placement.  What is worse, given the vast number of ICF/MR residents who presently do not have guardians to oppose community placement, the Springstead Objectors' current opposition may not be enough to preserve the ICF/MR facilities they rely on for their care and that they call home.  This is because the proposed settlement agreement' "integration plan" would significantly depopulate state-run ICF/MR centers and deprive ICFs/MR of necessary funding, thereby constructively imposing community care upon on the Springstead Objectors regardless of their desire or opposition to being placed in a community care facility.

The plan provided in the proposed settlement agreement would compel Defendants to move *at least* 400 ICF/MR residents – roughly 35% of the current ICF/MR population – into community care over the next five years.[4]  (Proposed Settlement Agreement, Dkt. #105, Ex.2, V.1.a-e.)  The integration plan also requires Defendant DPW to make community care funding "one of its top budget priorities," to consider "consolidating the budget lines for state ICFs/MR and Community Waiver services," and, prior to consolidating the budget lines, to "shift funds

---

[4] The non-opposition of profoundly retarded, non-verbal ICF/MR residents without guardians to speak on their behalf is critical to achieving the community placement numbers called for by the proposed settlement agreement.

from the carry-forward budget for state ICFs/MR to the Community Waiver services budget."

(*Id.*)[5]

Without question, these provisions will impair the quality of care in state-run ICFs/MR

and will result in closure of most ICFs/MR.  While Plaintiffs will no doubt argue that the

proposed settlement agreement says nothing about closing centers or making ICF/MR care

unavailable, Plaintiffs are staunch proponents of closing ICF/MR facilities and using the funding

from shuttered facilities to promote community care initiatives.  (*See* Pl. Mem. in Supp. Sum. J.,

Dkt. #49, at 11-12 (criticizing DPW for failing to close the Hamburg and Selinsgrove Centers to

"maximize funding" for community care initiatives)).[6]

The Third Circuit Court of Appeals has expressly stated that disadvantaging ICF/MR

residents by transferring funds to foster community placements is not acceptable under

*Olmstead.*  In *Frederick L. v. Department of Public Welfare of Pennsylvania*, a case involving

the community placement of mental health patients from a state-run facility to community

settings, the Third Circuit observed:

> Assuming a limited pool of budgetary resources, if DPW had siphoned off monies
> appropriated for institutional care for mental health patients in order to increase
> community placements, DPW would have run afoul of *Olmstead* prohibition on
> favoring those "who commenced civil actions" at the expense of institutionalized
> mental health patients who are not before the court. Any effort to institute fund-

---

[5] These efforts to deplete state-run ICFs/MR of residents and funding are further bolstered by the proposed settlement agreement's education initiatives, which are decidedly pro-community care, do not provide a full range of information and seek to impose community care upon ICF/MR residents by impeding their ability to conduct a meaningful evaluation of available care options.  Notably, the proposed settlement agreement provides for a "Community Partnership Steering Committee," that, true to its name, is to be comprised predominately of community care advocates: a DRN representative, a provider representative, a representative of the groups that administer community care programs for DPW, a community care resident, a community care resident's family member, and a representative of the Office of Developmental Programs.  (*Id.* at IV.1.a.)  The goal of this Committee is to conduct an aggressive campaign steering ICF/MR residents into community care elections.

[6] The proposed settlement agreement provides Plaintiffs' DRN counsel with a $432,500 fee  award.  DRN is a publicly funded organization, and the Springstead Objectors respectfully submit that these funds would be better spent providing care either the developmentally disabled residents of either community care or ICF/MR facilities.

shifting that would disadvantage other segments of the mentally disabled
population would thus fail under *Olmstead*.

364 F.3d 487, 497 (3d Cir. 2004) (quoting *Olmstead*, 527 U.S. at 604-06).

Defendants have noted that severe financial constraints already limit the services DPW is
able to provide.  (Defs.' Mem. in Supp. Sum. J., Dkt. #53, at 4.)  Depleting ICFs/MR of residents
and limited, necessary funding undoubtedly will result in the closure of ICF/MR facilities and
impair the level of care they provide to the developmentally disabled.  Thus, the "viable
integration plan" provided by the settlement agreement will, contrary to the tenets of *Olmstead*,
impose community care upon the Springstead Objectors for whom ICF/MR care is the most
appropriate and integrated form of care for their unique and individual needs.

> **D.    The Springstead Objectors' Interests Are Not Adequately Represented in the
> Litigation.**

There is no question that neither the Plaintiffs' DRN counsel nor Defendant DPW
represents the Springstead Objectors' interests in the present litigation.  Rather, Plaintiffs and
DRN have doggedly pursued their community-only ideology without care or regard to the views
or concerns of the Springstead Objectors who cannot reside in community care or do not
currently wish to leave their ICF/MR homes.  Moreover, when the Springstead Objectors have
sought to provide the Court with their views on the claims Plaintiffs have asserted, Plaintiffs'
DRN counsel routinely have endeavored to prevent the expression of these views.  For their part,
the Defendants have stipulated to class definitions that place the Springstead Objectors in great
risk of harm and have now agreed to and seek approval of a settlement agreement that will
impose community care upon the Springstead Objectors in direct violation of the rights
guaranteed to them by the Supreme Court's *Olmstead* decision.

## II.     THE SPRINGSTEAD OBJECTORS ALSO SATISFY THE CRITERIA TO INTERVENE BY PERMISSION.

Should the Court deny intervention as of right, the Springstead Objectors respectfully request that the Court allow them to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b).  "Permissive intervention is available upon timely application 'when an applicant's claim or defense and the main action have a question of law or fact in common.'" *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992) (quoting Fed. R. Civ. P. 24(b)). Whether to grant such permission is entirely within the district court's discretion. *Cont'l Cas. Co. v. SSM Group, Inc.*, No. 94-7789, 1995 WL 422780, at *5 (E.D. Pa. July 13, 1995) (citation omitted).

In deciding whether to grant permissive intervention, the potential commonality of the intervenors' "claim or defense" with the pending action have been broadly defined.  *See id*. at *5 (citation omitted).  That requirement is easily met here.  As already discussed above and in the Springstead Objectors' Supplemental Objections (Dkt. #221), the Springstead Objectors' interests will directly be harmed by the Plaintiffs' claims and the proposed settlement agreement they have entered with Defendants to attempt to settle those claims.[7]

---

[7] Courts often also analyze whether allowing permissive intervention will unduly delay the litigation.  *See, e.g., Cont'l Cas. Co.*, 1995 WL 422780, at *6.  As the Springstead Objectors seek to intervene to present the Court with objections to the proposed class settlement and as this application has been timely made within the objection period proposed by Plaintiffs in the class settlement notice provisions that have been approved by the Court, there is no risk that granting the Springstead Objectors' intervention would unduly delay the litigation.

## CONCLUSION

The Springstead Objectors respectfully request that the Court grand their motion for intervention pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  In the alternative, the Springstead Objectors respectfully request that the Court grant permission to intervene pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated:  Philadelphia, Pennsylvania      **VAIRA & RILEY, P.C.**
         August 2, 2011

By:    /s/ John E. Riley
       John E. Riley
       PA ID# 22504
       William J. Murray, Jr.
       PA ID# 73917
1600 Market Street, Suite 2650
Philadelphia, Pennsylvania  19103
(215) 789-9405
(215) 751-9420 (fax)

**SIDLEY AUSTIN LLP**

Benjamin J. Hoffart
787 Seventh Avenue
New York, New York  10019
(212) 839-5300
(212) 839-5599 (fax)

*Attorneys for Craig Springstead, Grace Meo, Daniel Bastek, Michael Storm, Beth Ann Lambo, Richard Kohler, Maria Kashatus, and Wilson Sheppard*